IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BOARD OF THE COUNTY OF
COMMISSIONERS OF THE COUNTY OF
BERNALILLO,

    Plaintiff,

    v.                                             No. 1:23-cv-01103-SMD-KK

CENTURION DETENTION HEALTH
SERVICES, LLC, ET AL.,

    Defendants.

## **MEMORANDUM ORDER**

THIS MATTER is before the Court on Defendants' Motion to Dismiss indemnification claims in Count One and Count Two, as well as Counts Three through Six of the Amended Complaint, Doc. 70, ("Am. Compl.") filed October 18, 2024. Doc. 76 (Defs.' Mot. to Dismiss"). Plaintiff filed its response on November 22, 2024. Doc. 80 ("Pl.'s Resp."). Defendants filed their reply on December 13, 2024. Doc. 90 ("Defs.' Reply"). The Court has reviewed the parties' submissions, the record, and the relevant law, and for the reasons below, the Motion is **GRANTED**.

### BACKGROUND

Plaintiff Bernalillo County (the "County") contracted with Defendant Centurion Detention Health Services, LLC ("Centurion") under a Professional Services Agreement (the "PSA"), which remained in effect from October 2018 to October 2021. Am. Compl. ¶¶ 54, 57–60. Under the PSA, Centurion agreed to provide medical, dental, mental health, and psychiatric services to inmates at the Metropolitan Detention Center. *Id.* ¶¶ 33–39. The PSA required Centurion to maintain liability insurance naming the County as an

additional insured. *Id*. ¶¶ 39–41. Defendant Columbia Casualty Company ("Columbia Casualty") issued general liability policies covering the relevant periods and listed the County as an additional insured. *Id*. ¶ 57.

The PSA contains an indemnification provision obligating Centurion to indemnify the County from claims arising from Centurion's services. *Id*. ¶ 39. The PSA states:

> [Centurion] agrees to defend, indemnify and hold harmless the County and its officials, agents and employees from and against any and all claims, actions, suits or proceedings of any kind brought against said parties because of any injury or damage received or sustained by any person, persons or property arising out of or resulting from the Services performed by [Centurion] under this Agreement or by reason of any asserted act or omission, neglect or misconduct of [Centurion] or [Centurion] agents or employees or any Subcontractor or its agents or employees. The indemnity required hereunder shall not be limited by reason of the specification of any particular insurance coverage in this Agreement.

Doc. 17, Ex. A at 9.

The PSA further provides that if indemnification is triggered, Centurion "shall have the right to control the defense and/or settlement of any indemnified claim." Doc. 66, Mem. & Order ("Order") at 19; Defs.' Mot. to Dismiss at 3.

The PSA also contains an exclusion clause, which states:

> Notwithstanding anything to the contrary herein, [Centurion] shall not in any event be required to indemnify, defend or hold harmless the County with respect to any injury or damage arising out of or resulting from, in whole or in part, any act, conduct, misconduct or omission of the County, its agents, employees or officers.

Am. Compl. ¶ 39.

In essence, the exclusion clause provides that Centurion has no obligation to indemnify the County for claims arising, in whole or in part, from the County's own act, misconduct, or omission.

Four inmate lawsuits followed: *Bryant, Garcia, Nez,* and *McCoy*.[1] Each named both the County and Centurion as defendants and alleged negligence and medical malpractice claims. Am. Compl. ¶¶ 76, 134, 169, 213. Centurion settled *Bryant, Garcia,* and *Nez*. *Id*. ¶¶ 111–12, 153–54, 191–92, 238–40. *McCoy* remains pending, and Centurion represents that it is negotiating a settlement. Defs.' Mot. to Dismiss at 9. It is undisputed that the dismissals in *Bryant, Garcia,* and *Nez* disposed with prejudice of all claims against the County covered by the PSA, whether filed or unfiled. Am. Compl. ¶¶ 111–12, 153–54, 191–92, 238–40.

The County did not participate in the settlements of *Bryant*, *Garcia*, and *Nez*. *Id*. It alleges those settlements were inadequate because they left the County exposed to potential joint and several liability, even though each dismissal expressly released all claims against the County that fall within Centurion's indemnification obligations under the PSA. *Id*. ¶¶ 112, 142, 153, 191. The County further asserts that it had to enter separate settlements with the plaintiffs in those cases and incurred additional expenses to protect itself from liability. *Id*. ¶¶ 117, 154, 193. The County does not allege any other injury beyond the potential exposure to joint and several liability.

On November 3, 2023, the County filed this action against Centurion and Columbia Casualty. Order at 4. The original Complaint asserted four counts: (1) declaratory judgment that Defendants breached duties to insure, defend, and indemnify the County in *Bryant, Garcia, Nez,* and *McCoy*; (2) breach of contract for that failure; (3) breach of the

---

[1] *See* (1) *Mathis ex rel. Est. of Bryant v. MHM Health Pro., LLC, et al.,* No. D-202-CV-2021-04747 (N.M. Dist. Ct. Bernalillo Cnty. 2021); (2) *Murphy ex rel. Est. of Garcia v. Bd. of Cnty. Comm'rs.,* No. D-202-CV-2022-05405 (N.M. Dist. Ct. Bernalillo Cnty. 2022); (3) *Murphy ex rel. Est. of Nez v. Bd. of Cnty.. Comm'rs.*, No. D-202-CV- 2022-05342 (N.M. Dist. Ct. Bernalillo Cnty. 2023); (4) *Mathis ex rel. Est. of McCoy v. Bd. of Cnty. Comm'rs.,* Case No. D-202-CV-2023 (N.M. Dist. Ct. Bernalillo Cnty. 2023).

3

duty of good faith and fair dealing; and (4) violations of the New Mexico Trade Practices and Frauds Act. Doc. 17 at 8.

In a prior order, this Court dismissed the indemnification claims in Counts I and II regarding *Garcia* and *Nez* as moot, because those cases had been dismissed with prejudice, leaving no indemnification obligation. Order at 19. As to *Bryant* and *McCoy,* the Court held that the indemnification claims were unripe, as those cases remained pending at the time of the Order. *Id*. at 17. The Court also dismissed Count III, the bad faith failure to defend claim, and Count IV, the statutory claim, without prejudice for failure to state a claim. *Id*. at 22.

The County has since amended its Complaint, reasserting the four original counts and adding two more: (5) breach of fiduciary duty and (6) violations of the Unfair Practices Act. Am. Compl. ¶¶ 364–87. Defendants move to dismiss the indemnification claims in Count I and II pursuant to Rule 12(b)(1), and Count III through VI pursuant to 12(b)(6).

## LEGAL STANDARD

Rule 12(b)(1) authorizes a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Standing and ripeness challenges, "like other challenges to a court's subject matter jurisdiction, [are] treated as a motion to dismiss under Rule 12(b)(1)." *Kuzava v. United Fire & Cas. Co.*, No. 17-CV-02673 CMA/NYW, 2018 WL 3633558, *2 (D. Colo. July 31, 2018) (citing *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498–99 (10th Cir. 1995)); *see also Keyes v. Sch. Dist. No. 1, Denv. Colo.*, 119 F.3d 1437, 1445 (10th Cir. 1997) ("The impediments to ripeness are equally impediments to standing."). When making a Rule 12(b)(1) motion, a party may go beyond the allegations in the complaint and present affidavits or other evidence bearing on

4

jurisdiction.  *See Gonzales*, 64 F.3d at 1499; *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

To satisfy Article III justiciability requirements, a plaintiff must have standing and raise claims that are ripe and not moot.  *Nieto v. Univ. of N.M.*, 727 F. Supp. 2d 1176, 1183 (D.N.M. 2010) (citing, *D.L.S. v. Utah*, 374 F.3d 971, 974 (10th Cir.2004)); *Morgan v. McCotter*, 365 F.3d 882, 887–88 (10th Cir.2004).  To have standing, a plaintiff must show "(1) that he or she has suffered an injury in fact—an invasion of a legally protected interest that is concrete and particularized, and actual or imminent, not conjectural or hypothetical; (2) that there is a fairly traceable causal connection between the injury and the defendant's conduct complained of; and (3) that it is likely that a favorable decision will redress the injury." *Id*.

Ripeness doctrine addresses a timing question: when in time is it appropriate for a court to take up the asserted claim.  *ACORN v. City of Tulsa, Okla.*, 835 F.2d 735, 738 (10th Cir. 1987).  The doctrine prevents courts from entangling themselves in abstract disagreements by avoiding premature adjudication.  *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012) (quotations omitted); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49.  ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."); *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotations omitted).  Ripeness has roots "both in the jurisdictional requirement that Article III courts hear only 'cases and controversies' and in prudential considerations limiting our jurisdiction."  *Alto Eldorado P'ship v. City. of Santa Fe*, 634 F.3d 1170, 1173 (10th Cir. 2011).  In making a ripeness determination, courts evaluate (1) the fitness of the issue for judicial resolution and (2) the hardship to the parties of

5

withholding judicial consideration. *Gonzales*, 64 F.3d at 1499 (citing *Sierra Club v. Yeutter*, 911 F.2d 1405, 1415 (10th Cir.1990)); *Qwest Commc'n Int'l, Inc. v. F.C.C.*, 240 F.3d 886, 894 (10th Cir. 2001) (citing *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732–33, 118 S. Ct. 1665, 140 L. Ed. 2d 921 (1998)); *Nw. Pipeline Corp. v. FERC.*, 986 F.2d 1330, 1333–34 (10th Cir.1993).

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint "must contain sufficient factual matter" to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Accepting all well-pled allegations as true and construing them in the light most favorable to the plaintiff, the complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Robinson v. Kuhr Trucking, LLC*, 831 F. App'x 385, 388 (10th Cir. 2020). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 556. Because the sufficiency of a plaintiff's claim is determined by the complaint, defendants generally cannot defeat an allegation by raising affirmative defenses. *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965). The exception to this rule is "where the facts establishing the affirmative defense are apparent on the complaint's face." *Id.*

## DISCUSSION

Plaintiff's Count I seeks a declaratory judgment that Defendants failed to insure, defend, and indemnify the County. Count II asserts breach of contract for that same failure. Am. Compl. ¶¶ 236–303. Defendants move to dismiss the indemnification claims in both counts, arguing that this Court already resolved them in its prior order. Defs.' Mot. to Dismiss at 2.

Plaintiff asserted Count I and Count II in its original Complaint, and this Court dismissed the indemnification claims in those counts in a prior order, holding that they were moot as to *Nez* and *Garcia* and unripe as to *McCoy* and *Bryant*. Order at 12, 19.

Plaintiff has now reasserted the indemnification claims in its Amended Complaint, raising arguments that largely repeat those this Court already rejected. Am. Compl. ¶¶ 236–303. The only development since the prior order that bears on mootness of the indemnification claims is that *Bryant* has been dismissed in state court.[2] *See Mathis ex rel. Est. of Bryant v. MHM Health Pro., LLC,* No. D-202-CV-2021-04747 (N.M. Dist. Ct. Bernalillo Cnty. Dec. 11, 2024) (stipulated dismissal).

### I. Plaintiff's claim on Counts I and II regarding indemnification in *Nez*, *Garcia*, and *Bryant* are moot.

In its prior order, this Court has explained why the indemnity claims regarding *Nez* and *Garcia* are moot. Order at 17–19. The PSA expressly limits Centurion's indemnification obligation for its own acts and excludes any duty to indemnify for "injury or damage arising out of or resulting from in whole or in part, any act, conduct, misconduct, or omission of the County." Doc. 17, Ex. A at 9; Am. Compl. ¶ 39.

---

[2] A District court may take judicial notice of public records from administrative and judicial proceedings in state court without converting the motion to dismiss into motion for summary judgment. *Hodgson v. Farmington City*, 675 F. App'x. 838, 840. (10th Cir. 2017).

7

Consistent with that limitation, the parties settled the *Garcia* action on January 16, 2024 and dismissed with prejudice all claims against the County that were brought or could have been brought. Doc. 17, Ex. D, Ex. C; Order at 18.

The stipulated order in *Garcia* recites that "all claims . . . that could have been brought against Centurion, and all claims, filed or unfiled, against the Board of County Commissioners of the County of Bernalillo, Bernalillo County Metropolitan Detention Center covered under Section XII (A) of the Professional Services Agreement for Medical, Dental, Mental Health, and Psychiatric Services dated October 9, 2018 . . . arising out of the death of Nicolas Jame Garcia on October 4, 2020," were dismissed with prejudice. Doc. 17, Ex. D at 18.

Similarly, the Second Judicial District Court's dismissal order in *Nez* reflects that all claims that were brought or could have been brought against the County that fall under the PSA were dismissed with prejudice. *Id.*, Ex. C at 18.

Plaintiff first argues that the Court's dismissal of the indemnification claims on ripeness and mootness grounds in Counts I and II is jurisdictional and therefore should be without prejudice. Pl.'s Resp. at 11. That is correct as a general principle. *Lamle v. Eads*, 134 F.4th 562, 566 (10th Cir. 2025) ("Because mootness is jurisdictional . . . this dismissal should have been without prejudice.") (citing *Brown v. Buhman*, 822 F.3d 1151, 1179 (10th Cir. 2016)). Accordingly, this Court's prior order noted that dismissal of these indemnification claims was without prejudice. Order at 7. Nonetheless, the conditions that rendered the indemnification claims in *Nez* and *Garcia* moot remain unchanged. With *Bryant* now settled and dismissed, those same conditions extend to that case as well.

As the Court previously explained, indemnification depends on whether the underlying lawsuits impose liability on the County. Order at 9 (citing *Proassurance Specialty Ins. v. Fam. Works, Inc.*, 599 F. Supp. 3d 1082, 1092–93 (D.N.M. 2022)) (internal citations omitted). None of the underlying cases resulted in such a finding. Because the County was not held liable in *Nez*, *Garcia*, and *Bryant*, there is no indemnification obligation. *Id.* Each settlement released all claims covered under the PSA, thereby extinguishing the basis for indemnity. *Id.*

The County nevertheless argues that the settlements Centurion negotiated were deficient because they left the County exposed to potential joint and several liability. Pl.'s Resp. at 12. The Court already rejected that argument in its prior order. Order at 18. New Mexico has abolished joint and several liability except in narrow circumstances, such as inherently dangerous activities. *Id.* (citing *In re Otero Cnty. Hosp. Ass'n, Inc.*, 527 B.R. 719, 776–77 (Bankr. D.N.M. 2015), on reconsideration in part, 584 B.R. 746 (Bankr. D.N.M. 2018)) (internal citations omitted).

Plaintiff has not alleged facts that would bring the underlying cases within those exceptions, nor has it cited authority supporting the proposition that joint and several liability survives dismissals with prejudice in the underlying state lawsuits. Even if Plaintiff's theory had merit, the settlements already cover all claims arising from Centurion's acts or omissions. Plaintiff has not explained why it contends otherwise. The pleadings identify no cognizable injury beyond the speculative risk of joint and several liability.

Finally, Plaintiff conflates the duty to defend with the duty to indemnify. It asserts that indemnification claims tied to *Nez*, *Garcia*, and *Bryant* are not moot because the duty

9

to defend claim remains justiciable. Pl.'s Resp. at 15. The two duties are distinct. The duty to indemnify depends on an adjudication of the County's liability in the underlying suits. *Proassurance Specialty Ins.*, 599 F. Supp. 3d at 1082, 1092 (internal citations omitted). With no such adjudication in *Nez*, *Garcia*, or *Bryant*, there is no indemnity obligation. Accordingly, the indemnification claims in Count I and Count II regarding *Nez*, *Garcia*, and *Bryant* are moot.

## II. Plaintiff's claims in Counts I and II regarding indemnification in *McCoy* are unripe.

The ripeness inquiry evaluates whether the alleged facts present a substantial and immediate controversy between parties with adverse legal interests to warrant judicial intervention. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); *see also Golden v. Zwickler*, 394 U.S. 103, 109 (1969).

Under New Mexico law, the duty to indemnify is determined by the facts of the underlying case. *Proassurance Specialty Ins.*, 599 F. Supp. 3d at 1082, 1092. (internal citations omitted). An insurer's duty to indemnify cannot be adjudicated until the insured's liability has been established. *Id*.

In its prior order, this Court also applied a two-part ripeness test that requires courts to consider both the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration. Order at 8 (citing *Kan. Jud. Rev. Bd. v. Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008)). The Court concluded that the indemnification claims were not fit for adjudication because liability in the underlying actions had not been established, and delaying consideration imposed no hardship on the parties. Order at 10.

Since that ruling, the *Bryant* action has been resolved by settlement and dismissal, leaving *McCoy* as the only pending case. Am. Compl. ¶¶ 111–12. Because *McCoy* has not reached a final adjudication, any claim for indemnification remains premature. Order at 9 (citing *Proassurance Specialty Ins.*, 599 F. Supp. 3d at 1093) ("The duty to indemnify, on the other hand, is 'determined . . . by the actual underlying facts of the transaction;' mere allegations will not suffice . . . To that end, the insurer's duty to indemnify is not ripe for adjudication until the insured's liability has been established in the underlying action")).

The Court also applied the *Mhoon* factors and weighed against exercising jurisdiction over indemnity claims tied to pending state proceedings. Order at 12–16. That reasoning remains sound. *McCoy* is still being litigated in state court, and a declaratory judgment from this Court would not settle the factual or legal disputes. Instead, it would increase friction with the state forum, which is better suited to resolve the indemnification issues.

Plaintiff asserts that the indemnification claim in *McCoy* is ripe because the duty to defend is justiciable now. Pl.'s Resp. at 16–17. Plaintiff again conflates the duty to defend with the duty to indemnify. As this Court has explained, the two duties are distinct. Order at 9. The justiciability of a defense obligation does not make an indemnity obligation ripe, because indemnification depends on the resolution of liability in the underlying action. Order at 9–10 (citing *Valley Imp. Ass'n, Inc. v. U.S. Fid. & Guar. Corp.*, 129 F.3d 1108, 1126 (10th Cir. 1997)); *Culp v. Nw. Pac. Indem. Co.*, 365 F.2d 474, 478 (10th Cir. 1966); *Harbin v. Assurance Co. of Am.*, 308 F.2d 748, 750 (10th Cir. 1962). Until the state court determines whether the County bears liability in *McCoy*, the indemnification claim remains unripe.

Given these circumstances, Plaintiff's decision to reassert indemnification claims in Counts I and II does not change the analysis. Those claims remain jurisdictionally barred as moot or unripe.

### III.    Plaintiff fails to state a claim for bad faith failure to defend.

The Court previously dismissed the County's bad faith failure to defend claim on Rule 12(b)(6) grounds. Order at 19–23. In its Amended Complaint, the County seeks to revive that claim by alleging that every contract carries an implied duty of good faith and that every insurance policy imposes a duty to deal fairly with the insured. Am. Compl. ¶¶ 305, 316. On that basis, the County asserts Defendants failed to defend and thereby breached their contractual obligations in bad faith. *Id*. at ¶¶ 304–54.

Defendants respond that, under New Mexico law, a simple breach of contract does not constitute bad faith. Defs.' Reply at 10 (citing *Gosnell Dev. Corp. of Ariz. v. Am. Nat'l Fire Ins. Co.*, No. CIV 99-632, 2000 WL 36739576, at *3 (D.N.M. Aug. 4, 2000)). To state a claim for bad faith, the breach must be "frivolous or unfounded." *Id*.; *Nilson v. Peerless Indem. Ins. Co.*, 484 F. Supp. 3d 1050, 1091 (D.N.M. 2020). Defendants contend that the County has not alleged any facts showing that Centurion's conduct meets that standard. *Id*. at 10–11. Plaintiff disagrees, arguing that the cases Defendants rely on are inapposite and inconsistent with *Dove*, which held that an insurer breached its duty to defend when it unilaterally denied a claim. Pl.'s Resp. at 17 (citing *Dove v. State Farm Fire & Cas. Co.*, 399 P.3d 400, 406 (N.M. Ct. App. 2017)). The Court agrees with Defendants that the proper standard for bad faith is whether the insurer's conduct is "frivolous or unfounded." *Nilson*, 484 F. Supp. 3d at 1091 ("If an insurer denies or delays payment for 'frivolous or unfounded reasons,' that insurer is acting in bad faith." (internal citations omitted)).

"Unfounded" does not mean erroneous or incorrect; it refers to conduct akin to reckless disregard, where the insurer "utterly fails to exercise care for the interests of the insured" in denying or delaying performance, amounting to an utter or total lack of foundation" for asserting non-liability. *Id.* at 1091. The New Mexico Supreme Court has articulated the same principle, defining "bad faith" as "any frivolous or unfounded refusal to pay." *Sloan v. State Farm Mut. Auto. Ins. Co.*, 85 P.3d 230, 236 (N.M. 2004) (citing *State Garm Gen. Ins. Co v. Clifton*, 527 P.2d 798, 800 (N.M. 1974)).

Measured against that standard, the Amended Complaint does not show that Centurion acted in a frivolous or unfounded manner. It is undisputed that three of the four underlying cases were resolved and that all claims against the County under the PSA were dismissed with prejudice. Am. Compl. ¶¶ 111–12, 153–54, 191–92, 238–40. The County identifies no concrete injury from those resolutions other than its previously asserted concern about joint and several liability, an issue this Court has already rejected. To support the claim, the County alleges that Centurion initially agreed to assign counsel but later resolved the cases without the County's participation. Am. Compl. ¶ 310. The County also identifies a series of alleged failures by Centurion to defend it in the underlying state actions. *Id.* Standing alone, these allegations do not plausibly demonstrate an arbitrary, baseless, or recklessly indifferent refusal to defend.

Plaintiff mischaracterizes failure to defend as a bad faith failure to defend. Defendants' motion does not seek to dismiss the failure to defend claim altogether; it challenges only the allegation of bad faith. Defs.' Mot. to Dismiss at 9–11.

Because the Amended Complaint does not allege facts that would establish a frivolous or unfounded refusal to defend, Count III fails to state a claim. This claim is dismissed.

IV. **Plaintiff fails to state a claim for violation of the Trade Practices and Frauds Act.**

In its prior order, this Court dismissed Plaintiff's claim under the New Mexico Trade Practices and Frauds Act for failure to state a claim. Order at 22. Plaintiff's Amended Complaint attempts to cure that deficiency by pointing to specific statutory provisions, but the amended allegations still do not plausibly state a claim. Am. Compl. ¶¶ 355–63.

First, Plaintiff invokes N.M. Stat. Ann. § 59A-16-20(C) (1978), which requires insurers to adopt and implement reasonable standards for the prompt investigation of claims. Am. Compl. ¶¶ 357–60. The Amended Complaint, however, does not identify what standards were missing or inadequate, nor does it describe what investigation Defendants undertook or how it was deficient.

Instead, Plaintiff alleges that Centurion promised to assign counsel to defend the County but later settled without the County's participation. As examples, Plaintiff cites Centurion's alleged failure to investigate and defend in the four underlying cases but identifies no specific deficiency or how it could constitute an unfair practice under the Act. *Id*. ¶¶ 357–60. These allegations do not establish a lack of reasonable standards; they merely restate failure to defend claims already raised elsewhere.

The Amended Complaint then invokes § 59A-16-20(E), which requires insurers to attempt in good faith to effectuate prompt, fair, and equitable settlements. *Id*. Plaintiff contends that Centurion's settlements in *Nez*, *Garcia*, and *Bryant* were made without its

14

involvement and left it exposed to joint and several liability. *Id*. That argument is unavailing. As this Court has explained, New Mexico has abolished joint and several liability except in limited contexts such as inherently dangerous activities, none of which are alleged here. Order at 18. Plaintiff characterizes the *Bryant* settlement as "secret" and "unilateral" but offers no facts showing that the settlement was not prompt, fair, and equitable, particularly since it dismissed with prejudice all claims covered under the PSA against the County. Am. Compl. ¶ 357.

Third, Plaintiff invokes § 59A-16-20(N), which requires insurers to provide a reasonable explanation for the denial of a claim or for the offer of a compromise settlement. Am. Compl. ¶¶ 357–60. The Amended Complaint, however, does not allege facts showing that Defendants denied any claims or settlement offers. Instead, it merely reiterates that Centurion failed to promptly provide reasonable explanation for its refusal to defend the County in *Bryant*, *Garcia*, *Nez*, and *McCoy*. *Id*. Taken as true, these allegations establish only a failure to defend claim. Absent an allegation that Centurion denied a claim or rejected a settlement offer, § 59A-16-20(N) is not applicable.

Finally, Plaintiff invokes § 59A-16-20(A), which prohibits misrepresenting pertinent facts or policy provisions relating to coverage. Am. Compl. ¶ 361. Plaintiff alleges that Columbia assigned its obligations to Centurion without informing the County, thereby creating the false impression that Columbia remained the insurer. *Id*. Yet the Amended Complaint does not explain how this alleged misrepresentation affected coverage. The settlements in *Bryant*, *Garcia*, and *Nez* dismissed all claims against the County with prejudice, and the County identifies no instance in which coverage was denied

or limited because of the alleged misrepresentation. Am. Compl. ¶¶ 111–12, 153–54, 191–92, 238–40.

Plaintiff's Amended Complaint again recites statutory language but fails to supply supporting facts. The allegations do not show how Centurion's or Columbia's conduct fell within the scope of N.M. Stat. Ann. §§ 59A-16-20(C), (E), (N), or (A), nor do they show how any alleged deficiency caused Plaintiff harm. The claim therefore fails to state a claim and is dismissed.

### V.     Plaintiff fails to state a claim for breach of fiduciary duty.

The County alleges that Defendants breached fiduciary duties by placing their own interests above those of the County. Am. Compl. ¶¶ 371. In support, the County cites New Mexico Supreme Court cases and jury instructions that describe an insurer's obligations in fiduciary terms. Pl.'s Resp. at 22–23. Defendants disagree, arguing that the insurer-insured relationship does not impose a fiduciary duty. Defs.' Reply at 16.

New Mexico courts sometimes describe the insurer–insured relationship in fiduciary terms, but they stop short of treating it as a full fiduciary relationship. *Nilson*, 484 F. Supp. 3d at 1093–94. Instead, New Mexico imposes a duty of good faith on insurers. *Id*. In *Nilson*, the district court summarized that "a good faith duty is, without more, all that arises out of an insurer-insured relationship" under New Mexico law. *Id.* at 1094. That duty requires the insurer to act in good faith toward an insurer, but it does not transform the contractual relationship into one that carries the full scope of fiduciary responsibilities. *Id*. at 1095. Thus, the existence of an insurance contract alone does not create a fiduciary relationship. *Id*. at 1096.

Plaintiff attempts to distinguish *Nilson*, which held unequivocally that the duty of good faith is the only duty arising from the insurer–insured relationship. Pl.'s Resp. at 23.

16

Plaintiff contends that *Nilson* overlooked the Supreme Court of New Mexico case *American General Fire* and the jury instructions adopted in 2023. *Id*. According to Plaintiff, *American General Fire* stands for the proposition that the Supreme Court of New Mexico recognizes a fiduciary duty to defend owed by insurers. *Id*. That reading is not persuasive. *American General Fire* involved one insurer's refusal to reimburse another, on the theory that the insurer providing the defense had acted as a "volunteer" by covering claims outside the scope of coverage. *Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co.*, 799 P.2d 1113, 1116 (N.M. 1990). The court rejected that characterization, holding that the defending insurer was not a volunteer in that context. *Id*. ("[The insurer] was obligated to deal with [the insured] as a fiduciary and was under a duty to pursue the case or settle in good faith."). Properly understood, *American General Fire* is consistent with *Nilson*: it did not impose a broader fiduciary duty, but rather reaffirmed that the duty of good faith may at times be described in fiduciary terms. Describing the duty in such terms does not transform it into a true fiduciary obligation, and *American General Fire* does not undermine *Nilson*'s holding.

Plaintiff cites jury instructions UJI 13-1701, which provide that "[t]he duty to act fairly, reasonably, honestly, and in good faith requires that an insurer must not place its own interests above those of an insured." Pl.'s Resp. at 23. This instruction does not state that the insurer must prioritize the insured's interest, as fiduciary duty demands. N.M.R.A., Civ. UJI 13-1701 (2023); *Nilson*, 484 F. Supp. 3d at 1095 ("A fiduciary is obligated to act primarily for another's benefit *in matters connected with such undertaking*.") (internal citations omitted).

17

In short, Plaintiff's authorities are best understood as consistent with *Nilson*—they describe the duty of good faith in robust terms but stop short of converting that duty into a fiduciary relationship. To the extent Plaintiff alleges breach of fiduciary duty as a distinct claim, it fails.

Even if a fiduciary duty did exist, Plaintiff's Amended Complaint falls short. Plaintiff does not plead facts showing that Defendants prioritized their own interests in a way that breached a fiduciary obligation distinct from the duty of good faith. All claims under the PSA have now been resolved favorably to Plaintiff, and Plaintiff does not identify how Centurion breached a fiduciary duty or explain how it failed to prioritize Plaintiff's interests. Am. Compl. ¶¶ 111–12, 153–54, 191–92, 238–40. This claim is dismissed.

## VI.    Plaintiff fails to state a claim for Unfair Practices Act violations.

To state a claim under the Unfair Practices Act, a plaintiff must plead facts showing: (1) an oral or written statement, visual description, or other representation that was false or misleading; (2) the representation was knowingly made; (3) it occurred in the regular course of trade or commerce; and (4) it was of the type that tends to deceive or mislead any person. Defs.' Motion to dismiss at 18 (citing *Apodaca v. Young Am. Ins. Co.*, 702 F. Supp. 3d 1094, 1122 (D.N.M. 2023)).

The Amended Complaint asserts that Defendants violated the Unfair Practices Act by failing to deliver the contracted quality of services, creating a gross disparity between price and value. Am. Compl. ¶ 386. Plaintiff points in particular to Centurion's representation that it would assign counsel to defend the County in court, followed by Centurion's decision to settle cases without the County's participation or further court proceedings. Pl.'s Resp. at 23–24. Plaintiff also alleges that Columbia reassigned its

insurer obligations to Centurion in a manner that created a false impression that Columbia remained the insurer. *Id*. at 24.

Taking those allegations as true, the Amended Complaint does not connect them to the statutory elements required under the Unfair Practices Act. *Id*. at 23. Plaintiff alleges that Centurion's promise to provide counsel was false because Centurion later settled the cases without providing counsel or pursuing litigation in court. The pleadings do not explain how this alleged misrepresentation harmed the County beyond the joint and several liability risks this Court has already rejected. Similarly, the allegation that Columbia reassigned its obligations to Centurion does not show how that transfer altered coverage. The settlements ultimately dismissed all PSA-covered claims against the County with prejudice, leaving no indication that the alleged misrepresentations resulted in liability or loss. Am. Compl. ¶¶ 111–12, 153–54, 191–92, 238–40.

The Amended Complaint recites statutory language but does not allege facts supporting the second and fourth statutory elements. It does not show that the representations were knowingly false or misleading, or that they tended to deceive an ordinary person. Because the statutory elements are not satisfied, the claim is dismissed.

## VII. Plaintiff fails to state a claim for punitive damages regarding Counts II, III, and V.

Plaintiff seeks punitive damages under Count II, Count III, and Count V. Am. Compl. ¶¶ 302–303, 353–54, 381–82, 388. Punitive damages in New Mexico require more than negligence. *Paiz v. State Farm Fire & Cas. Co.*, 880 P.2d 300, 307 (N.M. 1994). Because punitive damages are imposed for the limited purposes of punishment and deterrence, a culpable mental state is a prerequisite to punitive damages. *Sloan*, 85 P.3d at 236 (citing *McGinnis v. Honeywell, Inc.*, 791 P.2d 452, 460 (N.M. 1990)). A mere breach

of contract does not suffice. Punitive damages may be awarded if an insurer refuses or delays payment for frivolous or unfounded reasons, showing reckless disregard for the insured's interests. *Sloan*, 85 P.3d at 237.

Count III bad-faith failure to defend claim and Count V breach of fiduciary duty claim are dismissed, so punitive damages are not available on those claims. As to Count II breach of contract claim, the Amended Complaint does not allege facts showing a culpable mental state. It largely repeats that Defendants took no action in the underlying state lawsuits and that the County incurred damages. Am. Compl. ¶¶ 241–303. Even taken as true, those allegations do not plausibly establish wanton, malicious, or overreaching conduct that could justify punitive damages. *Sloan*, 85 P.3d at 237.

Accordingly, a punitive-damages demand is not viable.

## CONCLUSION

**IT IS ORDERED** that Defendants' Motion to Dismiss indemnification claims in Count One and Count Two, as well as Counts Three through Six of Plaintiff's Amended Complaint is **GRANTED** as described above.

_____
**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**