IN THE DISTRICT OF THE UNITED STATES
FOR THE DISTRICT OF NEW MEXICO

BOARD OF COUNTY COMM'RS
OF THE COUNTY OF BERNALILLO,

Plaintiff,

vs. 1:23-cv-01103 SMD/JFR

CENTURION DETENTION HEALTH
SERVICES, LLC and COLUMBIA
CASUALTY COMPANY,

Defendants.

**MEMORANDUM OPINION AND ORDER**
**ON**
**DEFENDANT CENTURION'S EMERGENCY MOTION**
**TO ENFORCE STIPULATED PROTECTIVE ORDER**

THIS MATTER comes before the Court on *Defendant Centurion Healthcare Services, LLC's Emergency Motion to Enforce Stipulated Protective Order, Compel Limited Discovery, and For Sanctions*. Doc. 242. Plaintiff Board of County Commissioners of the County of Bernalillo ("County") responded, to which Centurion replied. Docs. 247, 253. The Court held a hearing on the motion and considered argument of counsel. After careful review of the parties' submissions and arguments, the Court will **GRANT IN PART** the motion.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The factual background and procedural history of the instant case have been previously set forth by the Court and will not be restated here, except as necessary. The County contracted with Centurion to provide healthcare services at its detention center, and pursuant to that contract ceded control to Centurion over the defense and settlement of lawsuits filed against the County that Centurion was obligated to defend and indemnify. After several wrongful death and

negligence lawsuits were filed and ultimately settled,[1] Centurion terminated the contract, after which the County sued Centurion for bad faith failure to defend and indemnify.

The County's First Amended Complaint asserted claims for declaratory judgment, breach of contract, bad faith failure to defend, violations of the New Mexico Trade Practices and Fraud Act (TPFA) and New Mexico Unfair Practices Act (UPA), and breach of fiduciary duty. Doc. 70 at 44-67. On September 30, 2025, the District Judge granted Defendant Centurion's motion to dismiss, resolving all but the declaratory judgment and breach of contract claims. Doc. 151 at 20. More recently, on August 26, 2026, the District Judge granted Centurion's motion for summary judgment, so all claims against Centurion have been dismissed with the exception of Plaintiff's indemnification and duty to defend claims of the federal *Bryant* action.[2] Doc. 258.

A. <u>The Modified Protective Order</u>

At the time the County filed this lawsuit, at least two wrongful death/negligence lawsuits were still pending (and others predicted), prompting the parties to establish rules governing the exchange and use of information in this litigation.[3] Accordingly, in May 2024, the parties entered a Stipulated Confidentiality Agreement and Protective Order, Doc. 51, and then later a Modified Stipulated Confidentiality Agreement and Protective Order ("Modified P.O."), Doc. 111, which governs the discovery and subsequent use of sensitive information. The Modified P.O. protects confidential, litigation-related communications from public disclosure:

[1] *See infra* n. 3.

[2] *See Mathis v. Centurion Det. Health Servs., LLC*, No. 1:23-CV-00805-WJ-JFR (D.N.M. 2023).

[3] Centurion notes that, at the time that the County initiated the instant lawsuit, two state court lawsuits and one federal court lawsuit were pending against Centurion (another case would be filed), which was one reason the parties stipulated to the restrictions set forth in the Modified P.O. *See* Doc. 253 at 3 ("They [the County and Centurion] were, after all, in a dispute about how underlying litigation was handled and was being handled, so allowing litigation strategy and defense-side communications to be used outside of *this* litigation or allowing documents marked Confidential or AEO to be shared with non-parties absent clear protocols was of utmost concern…") (italics in original).

> d. Pursuant to Fed. R. Civ. P. 26(c) and this Court's guidelines, good cause exists to issue this protective order because the nature of this case and the nature of documents to be exchanged will likely include the Parties' and non-parties' proprietary and/or confidential commercial information, and personal protected health information. For instance, there are issues and requests concerning (i) on-going state court litigation for which the parties to this action have a common interest in protecting their litigation related communications from disclosure to the public (specifically including, but not limited to the adverse parties in the underlying litigation) and non-public contract information which the parties to this action have a common interest in protecting from disclosure to the public because it would harm the parties' competitive advantage in the marketplace if they were disclosed to the public.
>
> e. At a minimum, the disclosure of this information will likely cause the producing Party, or non-parties from whom such information is sought, significant harm if this information is disclosed without the conditions and protections contained herein.

Doc. 111 at 1-2, ⁋⁋ 1.d, e.

The Modified P.O. defines "Confidential" and "Attorney Eyes Only" ("AEO") information, *id*. at 2-3, ⁋ 3, and establishes requirements that a party must follow in order to designate information as such. *Id*. at 3-4. The Modified P.O. also outlines the process by which a party may challenge a designation of material as either Confidential or AEO. *Id.* at 8, ⁋ 5. Importantly, and central to the resolution of the instant motion, the Modified P.O. governs how material designated Confidential or AEO ("designated material") may be used. *Id.* at 5-7, ⁋ 4. "[M]aterial marked or otherwise designated as Confidential or Attorney Eyes Only shall be maintained in strict confidence by the Receiving Parties…", and disclosure is restricted to a limited, specified group of individuals. *Id.* at 5-6. The Parties agree that "all information and documents exchanged will be used *only for purposes of this litigation and for no other purpose*." Doc. 111 at 1, ⁋ 1.b (italics added).

Disclosure is governed as follows:

> d. A Party may not disclose information designated by another Party as Confidential or Attorney Eyes Only to persons allowed to view such materials under Sections 4.b [Confidential] and 4.c [Attorney Eyes Only], above, until that person has signed and agreed to the provisions set forth in Appendix A to this Confidentiality Agreement and Protective Order…"
>
> e. A Party may disclose its own Confidential or Attorney Eyes Only information in any manner.
>
> f. A Receiving Party who wishes to disclose information designated as Confidential or Attorney Eyes Only to a person not authorized by this Confidentiality Agreement and Protective Order to receive it must first make a reasonable attempt to obtain the Designating Party's permission."

*Id.* at 7, ⁋⁋ 4.d, e, f.

Disputes over designations of material as Confidential or AEO are addressed in Section 5 of the Modified P.O. Generally, the Receiving Party must notify the Designating Party, in writing, of the basis of dispute, must identify the specific Discovery Materials in dispute, must propose a new designation for such discovery materials, and then shall meet and confer with opposing counsel in an attempt to resolve the dispute. *Id.* at 8, ⁋ 5.a. In the event the dispute is not resolved at the meet and confer stage, the objecting party may file a motion to redesignate the materials. "The Discovery Materials shall remain subject to the Designating Party's Confidential or Attorney Eyes Only designation until the Court rules on the dispute." *Id.* at 8, ⁋ 5.b. Finally, regarding the ability of counsel to provide legal advice to their client, the Modified P.O. specifically limits use of AEO materials:

> In the event that any Discovery Material is marked "Attorneys' Eyes Only," this Confidentiality Agreement and Protective Order shall not bar any attorney herein in the course of rendering advice to his or her client with respect to this litigation from conveying to any client an evaluation in a general way of Attorneys' Eyes Only Confidential Material produced or exchanged herein; provided, however, that in rendering such advice and otherwise communicating with the client, the attorney shall not disclose the specific contents, directly or indirectly, of any Attorneys' Eyes Only Discovery Material produced herein, which disclosure would be contrary to the terms of this Confidentiality Agreement and Protective Order.

*Id.* at 11, ⁋ 9.

B. The State Court Complaint

On July 22, 2026, the County filed a complaint in state court against a law firm that represented the County in prior wrongful death and negligence lawsuits[4] brought by former inmates or their representatives. *See* Doc. 242, Ex. A. (filed under seal). Centurion settled these earlier lawsuits, with the assistance of the law firm, but the County alleges those settlements were inadequate because they left the County exposed to joint and several liability and required the County to enter into separate settlements with the plaintiffs, thereby incurring additional expenses. *See generally* Doc. 258 at 2-3. The newly filed state court complaint against the law firm alleges legal malpractice and breach of fiduciary duty, and contains numerous recitations of fact that, according to Centurion, improperly divulge designated material that is governed by the provisions of the Modified P.O. in this case.[5] Centurion claims the County violated the terms of the Modified P.O. by disclosing this information to its state court lawyers, who then included that material in the publicly-filed complaint. Accordingly, Centurion filed the underlying emergency motion for discovery and sanctions.

C. The Instant Motion, Response and Reply

Defendant Centurion filed the instant motion on July 29, 2026 to enforce the Modified P.O., compel limited discovery, and sanction the County and/or its counsel for violating the Modified P.O. Doc. 242 at 1. Centurion alleges that the County improperly disclosed

---

[4] *See* (1) *Mathis ex rel. Est. of Bryant v. MHM Health Pro., LLC, et al.*, No. D-202-CV-2021-04747 (N.M. Dist. Ct. Bernalillo Cnty. 2021); (2) *Murphy ex rel. Est. of Garcia v. Bd. of Cnty. Comm'rs.*, No. D-202-CV-2022-05405 (N.M. Dist. Ct. Bernalillo Cnty. 2022); (3) *Murphy ex rel. Est. of Nez v. Bd. of Cnty.. Comm'rs.*, No. D-202-CV-2022-05342 (N.M. Dist. Ct. Bernalillo Cnty. 2023); (4) *Mathis ex rel. Est. of McCoy v. Bd. of Cnty. Comm'rs.*, Case No. D-202-CV-2023 (N.M. Dist. Ct. Bernalillo Cnty. 2023); (5) *Mathis v. Centurion Det. Health Servs., LLC*, No. 1:23-CV-00805-WJ-JFR (D.N.M. 2023).

[5] Attached to Defendant Centurion's *Emergency Motion* are sealed exhibits, including Ex. A, the state court complaint for legal malpractice, and Ex. B, a table that identifies specific paragraphs of the state court complaint which reference designated material. *See* Doc. 242 (attachments filed under seal). The County filed its *Response* with an edited version of this sealed table. *See* Doc. 247, Ex. 6 (filed under seal).

Confidential and AEO designated documents—disclosed and designated in the instant case—which were then relied upon by state court counsel in filing the legal malpractice action in state court. *See id.*, Ex. A (filed under seal). By way of relief, Centurion seeks an order directing the County and its counsel to have the state court complaint sealed, to instruct all non-parties with whom they shared Confidential and AEO documents to delete and destroy such documents, to secure from these non-parties written confirmations that Confidential and AEO documents have been destroyed and obtain signed Appendix A's from them, and to reveal who shared what with whom. *See* Doc. 242, at 8. Centurion seeks its attorney's fees and costs in bringing this motion.

The County responds by stating there has been no violation of the Modified P.O. because, as previously found by the Court, the County is a joint client of Park & Associates, that it was entitled to, and therefore "owns" its client file from Park & Associates, and that the Modified P.O. expressly recognizes that "A Party may disclose its own Confidential or Attorney Eyes Only information in any manner." Doc. 247 at 1. The County avers that state court counsel never used any AEO documents to draft the state court complaint. *Id.* at 4. The County argues that "Centurion had no right in the first instance to designate the County's files as confidential, and it has no right to try to prevent the County from using its own documents from the Park & Associates' files 'in any manner.'" *Id.* at 14. The County further argues that Centurion has failed to demonstrate any violation of the Modified P.O., as Centurion has used some of the information in this litigation without regard to its own Confidential/AEO designations. *Id.* at 16-20.

By way of its Reply, Centurion relies on the plain wording of the Modified P.O., primarily that (1) all documents exchanged will be used only for purposes of this litigation and for no other purpose; (2) the use of consent restrictions and procedures are triggered by who designated the discovery material (not by who "owns" a document); and (3) the parties stipulated

and the Court acknowledged that significant harm is likely to occur if Confidential or AEO information is disclosed without adhering to the conditions and protections in the Order. Doc. 253 at 1-2. Centurion argues that the County conflates the recipient provision of the Modified P.O. with its use provision, and ignores that Centurion was the designating party for the documents used in the state court complaint, making the "own information" provision inapplicable. *Id.* at 10.

D. The Hearing

On August 28, 2026, the Court held a hearing on Centurion's emergency motion.[6] Counsel for Centurion argued the County in its Response has provided a clear admission it has used the documents designated by Centurion as Confidential and/or AEO, in direct violation of the Modified P.O. Liberty, ABQ-Pecos_20260828_094613 at 12:30 et seq; 30:00-30:17. Centurion noted the need for the Modified P.O. stemmed from the question of how Centurion defended the underlying cases, and recognized that litigation communications and settlement discussions necessitated the Modified P.O. The sharing of this information could have devastating consequences. *Id.* at 15:00 et seq. Upon inquiry by the Court as to whether a general reference to AEO information (as opposed to quoting a document specifically) is a violation of the Modified P.O., Centurion argued the use of the underlying AEO material constitutes a clear violation. *Id.* at 16:12 et seq. Centurion emphasized that the County's use of AEO material need not have involved improper disclosure of the document, but such use is still a violation of the Court order as it contravenes the process explicitly set in place by the Modified

[6] The Court discussed with the parties whether the hearing should be sealed, based on the fact that documents claimed to be confidential or AEO may be discussed. The parties agreed to review the recording of the hearing to determine if any parts should be placed under seal. Prior to public disclosure of the recording of the hearing, it was agreed that all parties would have the opportunity to review the recording for redaction purposes. Liberty, ABQ-Pecos_20260828_094613 at 7:52-8:45; *id.* at 34:50 et seq.

P.O. *Id.* at 19:00-20:00. Regarding the County's argument that, as a joint client of the law firm which also represented Centurion it therefore "owns" the documents and could use them any way it deems appropriate, Centurion stated the conclusion drawn is a non-sequitur; the joint client exception just meant the County was entitled to receive certain documents in discovery, it did not mean the County could divulge Centurion's privileged documents. *Id.* at 25:00-26:42 ("It's an outrageous position for the County to take."). Centurion also stated it has recently identified additional documents that were improperly disclosed in the state court complaint. *Id.* at 31:30 et seq.

For its part, the County denied that it violated the Modified P.O. The County admitted it did not previously possess the documents, nor did it challenge Centurion's designation of the documents as Confidential or AEO. Nonetheless, the County argued it did not violate the plain language of the Modified P.O., in light of the express terms and stated purposes of the document. *Id*. at 44:00 et seq. The County argued the Modified P.O. allows it to disclose its own documents as it sees fit. Possession is not the operative term in the Modified P.O., ownership is the operative term. *Id*. at 45:53. The County did not challenge Centurion's designation because, as owner of the documents, it didn't have to. *Id.* at 47:22-48:18; *see also* 52:16 ("If we own it, we get to use it and disclose it, it says disclose as we see fit."). Regarding the joint client doctrine, the County argued that the former client waives its right to attorney-client confidentiality when it has a lawsuit against the former lawyer for legal malpractice. *Id.* at 53:50-54:00. The County acknowledged Centurion may have a valid argument to confidentiality as to any document that did not come from the law firm during the course of joint representation, *id.* at 55:32, but not with respect to documents that the County owns. *Id*. at 55:52. The County also argued certain documents designated as Confidential were previously disclosed by Centurion, thereby waiving

any claim of privilege. *See, e.g., id*. at 59:20-1:03:25 (discussing items previously disclosed in deposition transcripts). If the Court were to find a violation of the Modified P.O., the County suggested attorney's fees would be appropriate only if the County's position was not substantially justified. *Id*. at 1:10:10.

Centurion argued in rebuttal the County's position (by disclosing Confidential and/or AEO material) cannot be substantially justified, as such disclosure occurred in direct violation of the express terms of the Modified P.O. *Id.* at 1:26:15. In terms of relief sought, Centurion emphasized it is unknown how much was disclosed, and to whom, and when, and the Court should order certificates of destruction. *Id.* at 1:27:20. Also, Centurion submitted the Court must determine who disclosed the information, and possibly those attorneys might need to be removed. *Id*.

At the conclusion of the hearing, the Court ordered the documents referenced by Centurion to be produced to Chambers in camera. The County objected to in camera review, as such process would allow Centurion to "backfill" its deficient briefing on the motion. *Id*. at 1:32:10. The Court overruled the County's objection and ordered in camera review.[7] *Id*. at 1:32:30.

<u>LEGAL STANDARDS</u>

Whether under Federal Rule of Civil Procedure 37(b) (for violation of a discovery-related order), Federal Rule of Civil Procedure 16(f) (violation of a pretrial order), or its inherent powers, the court is authorized to exercise its discretion in determining whether to impose sanctions for violations of stipulated protective orders. *See, e.g.*, *Kaufman v. Am. Family Mut.*

---

[7] Centurion produced documents for in camera review on September 2, 2026. Copies were provided to opposing counsel.

*Ins. Co.,* 601 F.3d 1088, 1092 (10th Cir. 2010). The court's decision is reviewed for abuse of discretion, a "deferential standard of review", in which the Tenth Circuit recognizes that "a district court is in the best position to define the scope of the discovery orders and attendant protective orders it issues." *Id.* at 1093. "Determination of the correct sanction for a discovery violation is a fact-specific inquiry, and in making such a determination[,] trial courts are accorded broad discretion." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 102 (D. Colo. 1996) (internal citation and quotation marks omitted, quoted with approval in *E. Colo. Seeds, LLC v. Agrigenetics, Inc.*, 2020 WL 2769792, at *2 (D. Colo. May 28, 2020)).

The joint client doctrine "applies to 'joint clients of the same attorney, in the same litigation.'- " *Utah First Fed. Credit Union v. Univ. First Fed. Credit Union*, 2024 WL 3510989, at *8 (D. Utah July 22, 2024) (quoting *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 594 (S.D. Fla. 2013). It recognizes that the attorney-client privilege may protect disclosures by a client or her attorney, which otherwise might constitute a waiver of the attorney-client privilege. *Id.* Waiving the joint-client privilege requires the consent of all joint clients. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 75(1) (2024 Update) ("If two or more persons are jointly represented by the same lawyer in a matter, a communication of either co-client that otherwise qualifies as privileged […] and relates to matters of common interest is privileged as against third persons, and any co-client may invoke the privilege, unless it has been waived by the client who made the communication."). A client may not unilaterally waive the privilege of the other joint clients' communications or of its communications that relate to other joint clients. *In re Teleglobe Commc'n Corp*., 493 F.3d 345, 363 (3rd Cir. 2007).

The standard for non-dispositive sanctions is the preponderance of the evidence, while dispositive sanctions require clear and convincing evidence. *Gates Rubber,* 167 F.R.D. at 108-

09. Sanctions must be appropriate, i.e., commensurate with the nature and extent of harm occasioned by the violation. *See, e.g., Olcott v. Del. Flood Co.,* 76 F.3d 1538, 1557 (10th Cir. 1996); *Cook v. City of Arvada,* 20-cv-00212-RBJ, 2021 WL 243451, at *11 (D. Colo. Jan. 25, 2021) (prohibiting plaintiff from using information that had been improperly disclosed in violation of protective order). The award of reasonable attorneys' fees and costs for the violation of a stipulated protective order falls under Rule 37(a)(5). *See* Fed. R. Civ. P. 26(c)(3); *Env't Dimensions, Inc. v. EnergySolutions Gov't Grp., Inc.*, 2021 WL 1060341 (D.N.M. Mar. 19, 2021). The award of attorneys' fees is inappropriate when the opposing attorney's position is substantially justified, Rule 37(a)(5)(A)(ii), (iii), which means that it is "justified to a degree that could satisfy a reasonable person." *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The award of attorneys' fees imposed should be compensatory, not punitive. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017).

ANALYSIS

The question before the Court is whether the Modified P.O. permits the Receiving Party to disclose designated material—i.e. information designated either Confidential or AEO—outside this litigation, when the Receiving Party has failed to challenge the Designating Party's designation. The lynchpin in the Court's analysis is the Modified P.O., which governs the parties' use of material disclosed in the discovery process. The parties stipulated to the Modified P.O., and agreed to be bound by its terms. *See* Doc. 111. Thus, for purposes of resolving the instant dispute, the Court must closely examine the specific wording of the Modified P.O. "The starting point for interpretation of a protective order lies in its plain language." *Sec. & Exch. Comm'n v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010).

The Court first notes the stated purpose behind the protective order. At its outset, the parties expressed a common interest behind entering into the Modified P.O. as "protecting their litigation related communications from disclosure to the public…" and specifically referenced "on-going state court litigation" as a justification and/or need for the P.O. Doc. 111 at 2, ⁋ 1.d. Indeed, the parties expressed their common interest in shielding certain materials from the public "because it would harm the parties' competitive advantage in the marketplace if they were disclosed to the public." *Id.* Given the pendency of "on-going state court litigation," the salient point is that the parties expressed a common need to shield certain information, and in so doing crafted a protective order meant to serve that interest.

A central component of the Modified P.O. is that the "information and documents exchanged will be used only for purposes of this litigation and for no other purpose." Doc. 111 at 1, ⁋ 1.b. The phrase "this litigation" plainly means the instant lawsuit, and not other lawsuits that a party may be part of. The County fails to address this term in its Response, *see generally* Doc. 247, and instead focuses the Court on what it sees as the permissible boundaries of proper "use". But by brushing aside the meaning of "this litigation," the County renders superfluous a foundational element of the Modified P.O. A plain reading of the Modified P.O. restricts use of documents that were produced under its parameters to "this litigation"; it does not give a Receiving Party unfettered choice over how to use documents it receives from the Designating Party. If accepted, the County's argument would require the Court to disregard very plain language of the Modified P.O. "[T]his litigation" can only mean one thing, and when documents are disclosed in "this litigation" and designated as Confidential and AEO in "this litigation," the inescapable conclusion is they can't be used by a party (or non-party) in other litigation. The

County's argument that it can use designated materials in any way it pleases renders superfluous a key provision of the Modified P.O.

In addition to asking the Court to disregard the plain language regarding "this litigation" of the Modified P.O., the County seeks to sidestep the very process it established to dispute Centurion's designation of documents as Confidential or AEO. The Modified P.O. is very clear in setting out its dispute protocols: should a Receiving Party disagree with the Designating Party's designation of certain documents as Confidential or AEO, the Receiving Party must notify the Designating Party in writing of the basis of dispute, must identify the specific discovery that is in dispute, must propose a new designation for those materials, and then must meet and confer with opposing counsel in an attempt to resolve the dispute. *Id.* at 8, ⁋ 5.a. In the event the dispute is not resolved at the meet and confer stage, the Receiving Party may file a motion to redesignate the materials.

The County did none of this because, it says, it doesn't have to. Instead, rather than seek a ruling from the Court, the County elevates a discrete sentence of the Modified P.O. to argue that, as "owner" of the documents, it could do with them as it deemed appropriate. The County's argument pins to a single sentence of the Modified P.O.:

> "A Party // may disclose // its own // Confidential or Attorney Eyes Only // information // in any manner."

Doc. 111 at 7, ⁋ 4.e. This simple sentence is comprised of several elements:

→ a noun ("**A Party**"),

→ a verb ("**may disclose**"),

→ a possessive ("**its own**")

→ an adjective ("**Confidential or Attorney Eyes Only**"),

→ an object of the verb ("**information**"),

→ and an <u>adverb</u> (“**in any manner**”).

While easy to look at each discrete grammatical element in isolation, it’s necessary to view the sentence as a whole. In the Court’s view, the County’s interpretation of this sentence strains a plain language reading. First, the sentence refers to “A Party” that “may disclose,” thus limiting relevant disclosures to parties in this lawsuit. Next, the term “its own” modifies “Confidential or Attorney Eyes Only information” and does not refer to any other information that has not been so designated; it is specific in modifying “Confidential or Attorney Eyes Only information.” Notably, information becomes “Confidential or Attorney Eyes Only” only *after* being designated by “A Party,” “in this litigation,” pursuant to the terms of this Modified P.O. Had the County been the Designating Party, then perhaps the broad use it envisions might apply. But to conclude the County’s “own” material incorporates *all* information that Centurion designated as Confidential or AEO, grafts language and meaning on the Modified P.O. that doesn’t exist. Here, Paragraph 4.e can only refer to information that has been designated Confidential and AEO, and the only party that has done any designating is Centurion. The County’s attempt to call that designated information “its own” falls flat.

Violations of protective orders have been addressed by courts in this district. In *Doe v. Taos Municipal Schools*, Magistrate Judge Jerry Ritter addressed such a claim, and noted the alleged violation turned on the order’s restriction on use of designated material “solely for purposes of prosecuting or defending this lawsuit, including any appeals of any other related legal proceeding brought by one of more of the parties to this litigation.” *Doe v. Taos Municipal Schools et al.*, No. 1:20-cv-01041-SCY-JHR, 2023 WL 6314647 (D.N.M. Sept. 28, 2023). Like the Modified P.O. in the instant case, the Confidentiality Order in *Doe* provided a method to dispute a confidentiality designation, and before using designated documents the parties are to

treat information designated confidential as though the designation is proper until the Court rules otherwise. 2023 WL 6314647, at *6. The facts in *Doe* reveal the plaintiff ("Doe 1") received documents in discovery that were designated in good faith as Confidential, and then another individual ("Doe 2") moved to intervene and used those confidential documents in a new complaint against the Defendants. 2023 WL 6314647, at *7. Judge Ritter found Doe 2 to have violated the Confidentiality Order by using designated documents in other legal proceedings, and by not following the process by which parties can object to each other's designations. Judge Ritter noted:

> The objection process would be largely superfluous if parties could, instead of objecting, ignore each other's designations, treat the information as non-confidential, then litigate the propriety of the designation after the information has already been misused or disseminated. The requirement that parties treat designated information as confidential until the Court rules on it exists for the very purpose of preventing this kind of situation.

*Id.* The undersigned cannot state the issue more succinctly. Here, Centurion in good faith[8] designated documents as Confidential or AEO. The County received that designated material in discovery. The County was bound by the terms of the Modified P.O. Rather than challenging Centurion's designation, the County used and/or disclosed that material outside of this lawsuit. This is a clear violation of the plain terms of the order.

Perhaps anticipating the plain language of the Modified P.O. does not countenance its use of the designated material outside of this litigation, the County leans on the joint client doctrine: because the County was a joint client of Park & Associates, the County "owns" its file at the law

[8] The County suggests that Centurion designated the documents in bad faith. Doc. 247 at 13 ("Indeed, Centurion's failure to acknowledge that the Park & Associates files belong to the County and that the County can use its documents 'in any manner' demonstrates that its unilateral control over the Park & Associates' files was improper, and its confidentiality designations were illegitimate and in bad faith."); *see also* Liberty, ABQ-Pecos_20260828_094613 at 1:05:10 et seq. The Court has seen no evidence of bad faith conduct and is not persuaded. Again, if the County disagreed with Centurion's decision to designate certain documents as Confidential and AEO, it had a means to challenge such designation.

firm and therefore can do what it pleases with the contents of that file. The problem with the County's argument, however, is that the joint client doctrine extends the attorney-client privilege to communications of either co-client as against third persons, and there is no privilege as between the two co-clients. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS, § 75. Thus, the joint client exception entitled the County to receive "communications between Centurion and Park & Associates about any of the underlying cases that were made on or before December 9, 2024…", Doc. 235 at 18, but the exception does not grant the County license to disclose those communications to others, absent a waiver by Centurion. *Accord In re Teleglobe Commc'n Corp.,* 493 F.3d at 363 ("…a client may unilaterally waive the privilege as to *its own* communications with a joint attorney, so long as those communications concern *only the waiving client*; it may not, however, unilaterally waive the privilege as to any of the other joint clients' communications or as to any of its communications that relate to other joint clients.") (italics added). Moreover, given the treatment of the documents at issue here—i.e. designated as Confidential or AEO by Centurion, pursuant to a stipulated protective order—it cannot be said Centurion has somehow waived its privilege. Quite the contrary: Centurion has deliberately labeled the documents Confidential and AEO. There is no question Centurion intended the documents to remain protected, and the joint client exception is of little service to the County.

The County might point to an exception recognized by some commentators, that communications by joint clients are generally protected from compelled disclosure to parties outside the joint representation, but when former co-clients sue one another, then all communications made in the course of the joint representation are discoverable. *See generally* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS, § 75 cmt. d. However, this caveat may be overcome when there is an agreement by the parties to protect attorney-client

information. *Id.* Here, the County has sued Centurion, so one could argue that the privilege pertaining to communications made to/from Park & Associates by either the County or Centurion does not shield subsequent disclosure. In the instant lawsuit between these former co-clients, however, the County and Centurion have stipulated to rules governing the use and disclosure of information. Centurion exercised its rights under the Modified P.O., and the County opted not to challenge Centurion's designations. The joint client exception does not authorize the County to simply opt out of terms of the Modified P.O., which it negotiated at arms' length with Centurion.

At hearing, the County relied upon *Crocs, Inc. v. Joybees, Inc.*, 2023 WL 8851997 (D. Colo. Dec. 8, 2023) to argue no violation occurred because none of the documents were actually used by the state court lawyers in filing the County's lawsuit against Park & Associates. Liberty, ABQ-Pecos_20260828_094613 at 43:50 et seq.; 1:11:16 et seq. In *Crocs, Inc.*, the defendant Joybees claimed Crocs violated a protective order by improperly using "confidential and proprietary documents produced by Joybees in [the First Action]—including dozens of documents designated by Joybees as 'Highly Confidential—Attorneys' Eyes Only[.]" 2023 WL 8851997 at *5. In its motion for sanctions, though, Joybees did not assert any specific portions of the complaint in the Second Action which disclosed highly confidential information from the Joybees' documents, but rather the complaint in the Second Action *generally* relied on information in those designated documents. *Id.* at *6. That is, the second complaint relied on information derived from designated documents, but did not cite those documents directly. Based on these circumstances, the Court in *Crocs, Inc.* found there was no violation of the protective order. *Id.* at *8.

Here, the state court complaint at times generally cites to Confidential or AEO documents without divulging specific details. For example, paragraph 44(h) of the state court complaint

alleges that "[Attorney] Mull provided a claims evaluation and identified the contribution of Centurion vis-à-vis Bernalillo County." *See* Doc. 242, Ex. A, ⁋ 44(h). Under the logic of *Crocs, Inc.,* this use would not constitute a violation of the Modified P.O. However, there are multiple instances where the state court complaint provides *specific* details from AEO documents. *See e.g.* Doc. 242, Ex. A, ⁋ 44(k) ("Mull was alerted by Mr. Park that the Bryant matter was valued at $_____ dollars by Bryant's attorney.") (redacted); ⁋ 44(p) (direct quote from Park email re proceeding to mediation and strategizing with Centurion's attorney); ⁋ 79 (quoting Park email to Centurion regarding antagonistic defenses of the County and Centurion); ⁋ 81 (stating results from focus group and "potentially catastrophic liability and damages exposure" for both Centurion and the County); ⁋ 83 (alleges Park firm participated in editing Centurion's release document with Bryant plaintiff while preserving legal claims against the County); ⁋ 103 (cites *inter alia* wrongful death plaintiffs' counsel's willingness to discuss global settlement for $_____ dollars); ⁋ (108) (same) (redacted). Thus, the state court complaint filed by the County clearly divulges specific information that comes from Confidential and AEO documents. Under these circumstances, *Crocs, Inc.* is inapposite and doesn't excuse the County's improper use.

Next, the County argues Centurion improperly designated documents as Confidential/AEO because many of those same documents, or perhaps information contained in those documents, had previously been disclosed at other points in this litigation. Doc. 247 at 16-20. Centurion disputes there has been a waiver of privilege, argues the state court complaint paragraphs are based on designated material from the instant case, and concludes their use by the County was improper. Doc. 253 at 9.

The Court finds Centurion has not waived its privilege through prior disclosures. If the County believed certain designated material is not Confidential or AEO due to Centurion's prior

public disclosure, then the County was obligated to raise such a challenge *before* making such unauthorized disclosures. Doc. 111, ⁋ 5. The County incorrectly argues Centurion "bears the burden of demonstrating that each document is confidential," Doc. 247 at 13, because Centurion as the Designating Party would only carry that burden had the County—as Receiving Party—challenged Centurion's designation. *See* Modified P.O., Doc. 111 at ⁋⁋ 5.a, b (setting forth dispute process: "If a Receiving Party disputes a Designating Party's designation of Discovery…", then "[t]he Designating Party bears the burden of proving" proper designation). The County never raised such challenge and deliberately ignored the process set forth in the Modified P.O. The County's argument that Centurion's alleged prior disclosures waived Centurion's ability to raise a claimed violation of the Modified P.O. disregards the plain language of the Modified P.O. and must be rejected.

The Court notes some of the designated material was Bates-stamped as originating from Park & Associates ("CentPA") or from Gallagher Bassett ("GB"),[9] but many were also identified as Centurion's own documents ("Cent"). Even if the County's argument prevailed—that it could do what it wanted with its own documents, i.e. docs identified as "CentPA"—there are still numerous instances of the County's use/disclosure of Centurion's own documents ("Cent") in the state court complaint. *See* Doc. 242, Ex. B (ref. state court complaint ⁋⁋ 44(g), 44(h), 44(i), 44(k), 44(l), 79, 81). To the Court, this reveals the County used Centurion's own designated material, specifically over which the County can make no ownership claim. [10]

[9] Gallagher Bassett has been identified as a third-party administrator to Centurion's insurance carrier. Liberty, ABQ-Pecos_20260828_094613 at 1:22:28 et seq.

[10] Counsel for the County acknowledged this possibility at hearing on the motion. *See* Liberty, ABQ-Pecos_20260828_094613 at 55:18: et seq ("… if there was a document that did not come from Park & Associates' files, then Centurion might have an argument to there being some protection of confidentiality that we don't get to claim that we own the document, and therefore the Protective Order protects those designations.").

In conclusion, the County chose to ignore the explicit terms and processes of the Modified P.O., thereby rendering that document superfluous. If it disagreed with Centurion's designation, the County had a remedy available to it. Instead, the County completely disregarded the agreement it signed. The Court is not willing to follow suit and disregard the plain and clear language of the Modified P.O. The Court concludes that the County violated the express terms of the Modified P.O. by disclosing designated material outside of this litigation.

SANCTIONS

Given that the Court has concluded the County and its lawyers violated the plain terms of the Modified P.O., the Court must next determine what sanctions are appropriate. Centurion asks the Court to order the County to:

a. Seal the state court complaint;[11]
b. Instruct all non-parties who received Confidential/AEO material to delete and destroy such;
c. Produce within 7 days written confirmations of destruction from non-parties, and all required Appendix A's;
d. Produce within 7 days all documents and communications showing who shared designated material with non-parties.

Doc. 242 at 8. Centurion also asks the Court to authorize "limited discovery" surrounding the improper disclosure. Doc. 242 at 1 (noting "limited discovery" as relief sought, without further argument). For its part, the County argues that, if the Court finds there has been a violation, nothing more than attorney's fees would be appropriate. Liberty, ABQ-Pecos_20260828_094613 at 1:10:10.

[11] The County reports that the state court complaint has been sealed. *See* Doc. 247, Ex. 1.

As noted above, sanctions must be appropriate, i.e., commensurate with the nature and extent of harm occasioned by the violation. *See, e.g., Olcott v. Del. Flood Co.,* 76 F.3d 1538, 1557 (10th Cir. 1996). Furthermore, any award of attorneys' fees imposed should be compensatory, not punitive. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017). First, the Court determines the County's position in defending its unauthorized disclosure—"we own the documents and we can do what we want with them"—is not substantially justified. As discussed supra, if accepted, this position requires the Court to disregard plain language of the Modified P.O. and inappropriately extend the joint-client doctrine beyond its established contours. The County's position here is not justified, let alone *substantially* justified. Accordingly, the Court will consider what sanctions are appropriate and compensatory.

Given that the responsibility for inappropriate disclosure clearly falls on the County's lawyers, the Court concludes these lawyers bear the responsibility of fixing their violation. Retrieving improperly disclosed documents from non-parties (or having the improperly disclosed delegated material deleted and/or destroyed) and paying the other side's costs are minimally necessary to protect Centurion's interests. Anything short of that fails to remedy the damage caused. Because Centurion fails to adequately show what, if any, "limited discovery" is necessary to manage the effects of the improper disclosure, the Court will deny Centurion's request for "limited" discovery. Similarly, removal of the County's lawyers from this case[12] is not proportional to their violation, so the Court denies that request.

Therefore, the Court orders that, within seven (7) days of this Order, the County's lawyers designate specifically to whom they (or any member of their defense team) disclosed

[12] Centurion raised this requested relief for the first time at hearing on this motion. Liberty, ABQ-Pecos_20260828_094613 at 1:27:20. The request was otherwise undeveloped.

designated material, when such disclosures were made, and what specific designated material was disclosed. Also, within seven (7) days, the Court will require each non-party who received designated material to certify they have deleted and destroyed all designated material they received, and for each non-party to complete and return an Appendix A. Finally, within fourteen (14) days, Centurion's attorneys may submit their fee bill detailing their fees and costs associated with bringing this emergency motion; the County may submit objections within fourteen (14) days. The Court finds these sanctions are adequate to repair the harm suffered by Centurion.

**THEREFORE, IT IS ORDERED**:

1. Within seven (7) days of this Order, the County's lawyers must notify Centurion in writing specifically to whom they (or any member of their defense team) disclosed designated material, when such disclosures were made, and what specific designated material was disclosed.

2. Within seven (7) days, each non-party must complete and return an Appendix A.

3. Within seven (7) days, each non-party who received designated material must certify in writing that they have deleted and destroyed all designated material they received.

4. Within fourteen (14) days, Centurion's attorneys may submit their fee bill detailing their fees and costs associated with bringing this emergency motion; the County may submit objections, if any, within fourteen (14) days thereafter.

**IT IS SO ORDERED**.

HON. JOHN F. ROBBENHAAR
United States Magistrate Judge